GEORGE J. MENARD *v.* LAWRENCE C. GASKELL, EXECUTOR (ESTATE OF ANNA A. MENARD), ET AL.
(AC 25621)

Dranginis, Flynn and DiPentima, Js.

Argued September 20—officially released December 6, 2005

*Kenneth I. Friedman*, for the appellant (plaintiff).

*Scott R. Chadwick*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The dispositive issue in this probate appeal is whether the trial court abused its discretion in refusing to impose a constructive trust on the decedent's estate. The court concluded that the disposition of the estate of the decedent's late husband, more than ten years before her death, did not give rise to a constructive trust on the decedent's estate in favor of the plaintiff, George J. Menard, the son of the decedent's late husband. We conclude that the court properly exercised its discretion and, therefore, affirm the judgment.[1]

The following evidence presented to the trial court is relevant to the disposition of the plaintiff's appeal. In 1954, Joseph L. Menard and the decedent, Anna A. Menard, married. From previous marriages, Joseph

---

[1] The defendants raise several alternate grounds for affirmance, including: (1) the trial court improperly admitted the testimony of the plaintiff, Robert Holmberg and attorney Richard F. Faille; (2) the trial court improperly held that a confidential relationship existed between Joseph L. Menard and Anna A. Menard; (3) the trial court improperly denied the defendants' motion for judgment of dismissal; and (4) the trial court improperly shifted the burden of proof from the plaintiff to the defendants. In light of our decision on the merits of the plaintiff's appeal, we decline to reach these issues.

Menard had a son, the plaintiff, and Anna Menard had a daughter, the defendant Barbara Gaskell. For most of the marriage, Joseph Menard and Anna Menard resided together and saw their respective children several times a month, although with varying degree depending on the circumstances of the children's lives at any given time. Joseph Menard and Anna Menard held the majority of their property, including their home and most of their bank accounts, as joint owners with rights of survivorship. In 1986, they visited an attorney, the defendant Robert F. Peters, who drafted mirror wills for them.[2] The wills provided that on the death of the testator, all real and personal property would pass to the spouse, but if the spouse predeceased the testator, the estate would pass equally to the plaintiff and Barbara Gaskell. Peters testified that it was customary for him to inform his clients that wills are meaningless documents until the makers die and that a surviving spouse is free to change his or her will following the death of the first spouse. The mirror wills were in effect at the time of Joseph Menard's death in December, 1989. Slightly more than $5000 passed under the terms of his will; the remainder of the property in which he had an ownership interest passed to his wife by virtue of her survivorship interest.

When Joseph Menard died, Anna Menard asked the plaintiff and a mutual friend and cousin, Robert Holmberg, to accompany and to help her in choosing a headstone for her late husband. After choosing the headstone, they had lunch, during which she allegedly told the plaintiff that although she had inherited all of her late husband's estate, on her death he and Barbara

---

[2] The plaintiff named Anna Menard's daughter, Barbara Gaskell; Anna Menard's son-in-law and the executor of her estate, Lawrence C. Gaskell; and Anna Menard's former attorney, Robert F. Peters, as defendants in this appeal from probate.

Gaskell would share it.[3] The afternoon of that conversation was the last time the plaintiff saw Anna Menard. She died more than ten years later, in July, 2000.

Several times in the years following Joseph Menard's death, Anna Menard revised her will, diminishing the plaintiff's portion of her estate. During that time, she also set up a joint bank account with Barbara Gaskell, into which she deposited slightly more than $200,000. In 1999, when she executed her final will, Anna Menard included a provision that expressly omitted the plaintiff from her will. She explained to her attorney that the reason for first diminishing the plaintiff's share and then excluding him entirely from her will was because she had not heard from him since Joseph Menard's death. That will was in effect at the time of Anna Menard's death.

The plaintiff learned of Anna Menard's death when the defendant Lawrence C. Gaskell, Barbara Gaskell's husband and the executor of Anna Menard's estate, telephoned him. The plaintiff obtained a copy of Anna Menard's will and, on discovering that he was left nothing of the estate, hired an attorney. The plaintiff then presented a claim against Anna Menard's estate for $310,200, approximately one half of its value, on the basis of an alleged constructive trust previously established by Joseph Menard and Anna Menard. That claim was disallowed by the executor in its entirety. The plaintiff filed an application with the Probate Court for a hearing on his rejected claim, and, on September 27, 2001, the Probate Court denied the claim.

The plaintiff appealed from the decision of the Probate Court to the Superior Court, claiming, inter alia, that the trial court should impose a constructive trust

---

[3] Although the court did not make an explicit finding regarding that conversation, it assumed that the conversation occurred in reaching its ultimate conclusions.

on Anna Menard's estate, "as well as upon gifts and transfers of assets held jointly at the time of [Joseph Menard's] death and made subsequent to his death." On May, 25, 2004, the trial court held a trial de novo.[4] The court concluded that the plaintiff had proven that a confidential relationship existed between Joseph Menard and Anna Menard but that the defendants had met their burden to negate the existence of a constructive trust. The court, therefore, rendered judgment in favor of the defendants, and this appeal followed.

Before reviewing the plaintiff's claim that the court improperly determined that the defendants had met their burden in negating the existence of a constructive trust, we set forth our standard of review. "A court's determination of whether to impose a constructive trust must stand unless it is clearly erroneous or involves an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court. . . . *Wendell Corp. Trustee* v. *Thurston*, 239 Conn. 109, 114, 680 A.2d 1314 (1996).

"[A] constructive trust arises . . . against one who, by . . . abuse of confidence . . . either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. . . . Id., 113. Courts may use the equitable device of a constructive trust to remedy the unjust enrichment which results from not disposing of property as promised after the promise induced someone with whom the promisor shared a confidential relationship to transfer the property to the promisor. *Starzec* v. *Kida*, 183 Conn. 41, 49, 438 A.2d 1157 (1981)." (Internal quotation marks

---

[4] At the conclusion of the plaintiff's case, the defendants filed a motion for judgment of dismissal pursuant to Practice Book § 15-8. The court reserved decision on the defendants' motion. Ultimately, in its memorandum of decision, the court denied the defendants' motion.

omitted.) *Riccio* v. *Riccio*, 75 Conn. App. 556, 558–59, 816 A.2d 733 (2003).

The plaintiff claims that after the trial court concluded that a confidential relationship existed between Joseph Menard and Anna Menard, the burden then shifted to the defendants to negate the existence of a constructive trust by clear and convincing evidence. The plaintiff further claims that the trial court abused its discretion in concluding that the defendants met that burden. In reaching its conclusion, the court relied on the following evidence presented by the defendants: (1) Joseph Menard and Anna Menard knew, in executing their wills, that the wills could be changed at any time, including by the surviving spouse following the death of the first spouse; (2) Joseph Menard and Anna Menard had chosen to hold most of their assets as joint owners with rights of survivorship so that only a small portion of their respective estates would be exposed to probate; (3) both Joseph Menard and Anna Menard had extensive business knowledge so that it was reasonable to infer that they both were sufficiently astute in financial matters so as to understand the significance of their wills and the provisions included therein; (4) the complete lack of any credible evidence that Anna Menard had made any promise to Joseph Menard that part of her estate would be left to the plaintiff at her death; and (5) Anna Menard's stated discontent with the plaintiff for having no contact with her following Joseph Menard's death.

The plaintiff argues that the facts on which the court relied were clearly erroneous because (1) the court relied on Peters' practice of informing his clients of the legal effect of mirror wills and (2) there was testimony before the court that Anna Menard had told Holmberg and the plaintiff that the plaintiff would receive one half of her estate at her death. "A finding of fact is clearly erroneous when there is no evidence in the

record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804, 882 A.2d 715 (2005). Additionally, to the extent that the court's findings of fact are dependent on its assessment of the credibility of witnesses, we will not second-guess those findings. "The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 292, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). Here, the trial court was presented with ample evidence of the nature of the relationship between Joseph Menard and Anna Menard, their respective financial contributions to their life together, their understanding of their financial arrangements and their intentions to provide for *each other* in the first instance. Because the court's findings of fact have ample support in the evidence, we conclude that those findings are not clearly erroneous.

The court's findings of fact provide the basis for its ultimate conclusion that a constructive trust was not established in this case.[5] "In determining whether there

[5] The plaintiff relies principally on *Starzec* v. *Kida*, supra, 183 Conn. 41, in arguing that the court improperly concluded that the defendants had negated the existence of a constructive trust. As the court briefly indicated in its memorandum of decision, however, the facts in *Starzec* starkly differ from the factual background here. Unlike Walenty and Clara, the couple in *Starzec*, Joseph Menard and Anna Menard commingled almost all of their property during their thirty-five year marriage. See id., 42. Likewise, Walenty and Clara executed their wills three days prior to Walenty's death when Walenty knew that death was near. Id. Additionally, the following evidence regarding the construction of the wills was before the court in *Starzec*: "In the dialogue leading to Clara's promise, Walenty incorporated his statement,

has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Internal quotation marks omitted.) *Sabatasso* v. *Hogan*, 91 Conn. App. 808, 826, 882 A.2d 719, cert. denied, 276 Conn. 923, 888 A.2d 91 (2005). On the basis of our review of the record and the court's memorandum of decision, we conclude that the trial court acted well within its discretion in concluding that the evidence presented by the defendants negated the existence of a constructive trust.

The judgment is affirmed.

In this opinion the other judges concurred.

'I decided to give the property at 225 Stanley Street, for life use to Clara, as long as she lives and then she promises me to give it back to the children,' into his question, 'Is that right, Clara, you promised?' [Clara answered], 'Walenty, on my honor before God, your children will have it after I'm gone.' " Id., 47. After the wills were executed, another conversation ensued in which Walenty stated, " 'Well, Clara, I did what I was supposed to do and now it's up to you to make sure that you do what you're supposed to do as you promised me.' " Id., 47–48. To that statement Clara replied, " 'Everything will be all right, Walenty. Don't worry.' " Id., 48.

On the basis of that evidence, the court was able to conclude easily that Walenty left the property to Clara after having been induced by her promise that she would give it to his children at her death. When she failed to keep true to that promise, the court determined that she had been enriched unjustly. Id., 49–51. In contrast, on the basis of the evidence in this case, the court reasonably could have concluded that Anna Menard did not acquire any property from Joseph Menard due to his reliance on any promise she made.