******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## ALAN FISCHER *v.* M&T BANK, N.A., ET AL.
## (AC 47029)

Alvord, Elgo and Seeley, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dismissing his action for, inter alia, breach of contract, for lack of standing. The plaintiff claimed that the court erred in concluding that, as a member of a limited liability company, A Co., he did not have derivative authority to act on behalf of L Co., a limited partnership of which A Co. was the general partner. During the pendency of this appeal, A Co. was dissolved and ceased to act as general partner for L Co., and L Co. was dissolved, and a receiver was appointed to act on L Co.'s behalf. *Held*:

This court dismissed the plaintiff's appeal for lack of standing, as the plaintiff did not have a specific personal or legal interest in this appeal from the dismissal of his action concerning L Co.'s rights with respect to a certain mortgage refinance, A Co. and L Co. having been dissolved and a receiver having been appointed pursuant to statute (§ 52-509 (a)) for L Co., and the receiver, rather than the plaintiff, is the only person authorized pursuant to statute (§ 52-511) to act on L Co.'s behalf.

Argued February 18—officially released June 10, 2025

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Fairfield and transferred to the judicial district of Ansonia-Milford, where the court, *J. Welch, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Appeal dismissed.*

*Laurence V. Parnoff, Jr.*, for the appellant (plaintiff).

*James T. Shearin*, with whom was *Marcy Tench Stovall*, for the appellees (defendants).

*Opinion*

SEELEY, J. The plaintiff, Alan Fischer, appeals from the judgment of the trial court dismissing his action

for, inter alia, breach of contract against the defendants, M&T Bank, N.A. (M&T Bank),[1] formerly known as People's United Bank, N.A. (People's United),[2] and two former bank employees, Kenneth Nuzzolo and Virgilio Lopez, Jr. On appeal, the plaintiff raises a number of claims related to the court's dismissal of his action. We dismiss the appeal for lack of standing.

The following facts, which are either undisputed or taken from the operative amended complaint, or were set forth by this court in a prior appeal involving the parties; see *Fischer* v. *People's United Bank, N.A.*, 216 Conn. App. 426, 285 A.3d 421 (2022), cert. denied, 346 Conn. 904, 287 A.3d 136 (2023); and procedural history are relevant to our resolution of this appeal. The plaintiff is a licensed real estate broker and one of three members of AJC Management, LLC (AJC), a limited liability company that is the general partner of 1730 State Street Limited Partnership (1730 LP). The other two members of AJC were Jefferson Scinto and Christian Scinto. The original limited partners of 1730 LP were Karen Scinto, Marianne Scinto, and Gabrielle Fischer. Karen Scinto subsequently sold, assigned, or transferred her interest in 1730 LP to Christian Scinto. Under 1730 LP's partnership agreement, AJC, as general partner, had "full, exclusive and complete discretion" to manage and control 1730 LP, which included "the right to . . . [c]ompromise, submit to arbitration, sue or defend any and all claims for or against [1730 LP]."

"On behalf of AJC, [the plaintiff] has managed . . . property owned by 1730 LP since 1998 [which is located at 1730 Commerce Drive in Bridgeport (property)]. [The plaintiff's] duties on behalf of AJC . . . included acting

---

[1] M&T Bank is formally known as Manufacturers and Traders Trust Company.

[2] M&T Bank is the successor by merger to People's United, which merger occurred on or about April 2, 2022.

as the property's sole property manager and negotiating and securing mortgages for the property.

"On or about December, 2019, [the plaintiff] began negotiating with People's United, through Lopez, to refinance [a] 2010 mortgage loan on the property. As a result of the negotiations, People's United offered to refinance the 2010 mortgage under new terms, which would include lower interest rates, and to extend a new loan for environmental remedial costs. People's United confirmed these offers in a mortgage commitment letter dated July 28, 2020. Thereafter, People's United sent [the plaintiff] a checklist of the documents it required in order to formalize the new loan and refinance the 2010 mortgage.

"The initial checklist of required documents included the 1730 LP partnership agreement. After People's United received and reviewed the 1730 LP partnership agreement, it requested that [the plaintiff] provide a resolution from AJC, 1730 LP's general partner, that was signed by all of AJC's members and stated that AJC authorized the loan and execution of the closing documents. Due to a dispute between the members of AJC, People's United never received a resolution that was signed by all members of AJC. On August 24, 2020, People's United notified [the plaintiff] that the July 28, 2020 commitment letter was rescinded due to [the plaintiff's] failure to obtain an acceptable resolution from AJC. As a result of the unsuccessful refinancing of the property's loan, the 2010 mortgage was declared to be in default on August 26, 2020." (Footnote omitted.) *Fischer* v. *People's United Bank, N.A.*, supra, 216 Conn. App. 430–31.

As a result of the unsuccessful negotiations in 2020 to refinance the 2010 mortgage on the property owned by 1730 LP, the plaintiff commenced the action in *Fischer* against People's United, Nuzzolo and Lopez.

The action in *Fischer* was brought by the plaintiff; the plaintiff's real estate company, Fischer Real Estate, Inc.; and 1730 LP. See id., 428. In *Fischer*, the trial court dismissed the claims asserted on behalf of 1730 LP for lack of subject matter jurisdiction; id., 432; and this court affirmed the dismissal of those claims on appeal. See id., 448. This court also dismissed the appeal as to the plaintiff and Fischer Real Estate, Inc., for lack of a final judgment, as all causes of action brought by those plaintiffs had not been disposed of by the trial court. See id., 435–37.

Subsequently, the plaintiff commenced the present action on January 23, 2023, which also stems from the unsuccessful negotiations in 2020 to refinance 1730 LP's 2010 mortgage. In an amended complaint filed on March 27, 2023, the plaintiff alleged claims against the defendants for breach of contract, bad faith, and a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The plaintiff further alleged that he "is authorized as a member of AJC to bring an action for AJC to protect its interests as a 1 [percent] owner of 1730 [LP] and/or to recover a judgment in favor of AJC if an effort to cause the other general partners to bring an action is not likely to succeed."[3]

The defendants thereafter filed a motion to dismiss the action, which the trial court granted. The trial court noted that "the entity that could claim aggrievement is 1730 LP. As alleged in the complaint, it is 1730 LP that has privity with the bank as that is the entity to which the bank issued a mortgage commitment. To have standing, therefore, [the plaintiff] must plead and demonstrate the ability to bring suit on 1730 LP's behalf." The court concluded that the plaintiff did not have standing

[3] We note that, in his principal appellate brief, the plaintiff asserts that this action was brought "to recover a judgment for the limited partnership 1730 [LP]." The trial court also found that "the present action against the defendants is with respect to the rights of 1730 LP, not AJC . . . ."

to bring a direct or derivative action on behalf of 1730 LP based on his interest in AJC, the general partner of 1730 LP, and because, in light of this court's holding in *Fischer*, the plaintiff did not have a right to assert claims on behalf of 1730 LP without first obtaining the unanimous consent of the members of AJC. See *Fischer* v. *People's United Bank, N.A.*, supra, 216 Conn. App. 445. The court, thus, concluded that, "because [the plaintiff] cannot directly or derivatively effectuate an act on behalf of AJC in this instance, AJC cannot act directly or derivatively to institute a suit on behalf of 1730 LP." Following the dismissal of his action, the plaintiff appealed on October 25, 2023.[4]

During the pendency of this action, Caroline Scinto and Christian Scinto, Jr., the children and heirs of Christian Scinto and as successor limited partners in 1730 LP,[5] commenced an action in the Superior Court seeking injunctive relief and the appointment of a receiver for 1730 LP, as well as the dissolution of 1730 LP (receivership action).[6] In an order dated January 11, 2024, related

[4] The defendants subsequently filed a motion to dismiss the appeal, arguing that, even if the plaintiff could show that he had standing to bring this action, due to circumstances that have occurred since the filing of this appeal, the plaintiff no longer can claim a cognizable interest in, or relationship with, 1730 LP that would establish his standing to pursue this appeal. In an order dated October 15, 2024, this court denied the motion to dismiss "without prejudice to the defendants addressing the jurisdictional issue in their appellees' brief and the plaintiff addressing the issue in his reply brief, if any."

[5] Christian Scinto died on August 6, 2022. Pursuant to § 12.1 of 1730 LP's partnership agreement, upon the death of a partner, the partner's interest descends to and is vested in the partner's heirs, provided the heirs comply with § 11.3, which requires the heirs to sign a document adopting the terms and provisions of the partnership agreement. Christian Scinto, Jr., and Caroline Scinto complied with that provision of the partnership agreement and, thus, became limited partners in 1730 LP.

[6] "The Appellate Court, like the trial court, 'may take judicial notice of files of the Superior Court in the same or other cases.' " *Stanley* v. *Quiros*, 222 Conn. App. 390, 392 n.3, 305 A.3d 335 (2023), cert. denied, 348 Conn. 945, 308 A.3d 33 (2024), and cert. denied, 349 Conn. 903, 312 A.3d 1057 (2024).

to a motion for a temporary injunction, the court in the receivership action stated: "AJC . . . is the general partner of 1730 [LP]. The general partners of AJC . . . were Christian Scinto . . . Jefferson Scinto, and [the plaintiff]. Christian Scinto . . . died in August, 2022. The remaining partners of AJC . . . Jefferson Scinto and [the plaintiff], have not reached an agreement to continue the business activities of either AJC . . . or 1730 [LP]. As a result of Christian Scinto's death, AJC . . . has suffered dissolution. As a result of [AJC's] . . . dissolution, it has ceased to act and cannot act as general partner for 1730 [LP]. As a result of [AJC's] . . . dissolution and it ceasing to act as a general partner of 1730 [LP], 1730 [LP] itself has dissolved and/or has suffered an inability to effectively or properly conduct its business affairs or receive representation in [a] pending foreclosure action against it." On May 7, 2024, the court in the receivership action issued a final order, in accordance with an agreement of the parties, appointing a receiver for 1730 LP.

In light of those developments, the defendants assert that this court should dismiss the appeal for lack of subject matter jurisdiction on the ground that the plaintiff no longer has standing to pursue this appeal. Specifically, the defendants contend: "Given that it is the rights of 1730 LP that are alleged to be at issue in this appeal, given the finding that AJC 'has ceased to act and cannot act as general partner for 1730 [LP],' given the dissolution of 1730 LP (which has not been appealed), and given the consented-to appointment of the receiver for 1730 LP (which has not been appealed), [the plaintiff], neither individually nor as a member of AJC, has any authority to act on behalf of AJC, nor does he have any 'real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy.' " The plaintiff responds only by asserting that he had the authority, pursuant to General Statutes

§§ 34-271a[7] and 34-271b,[8] to *bring the derivative action* on behalf of 1730 LP "to enforce AJC's right on behalf of 1730 [LP]"; he did not address the issue of *standing to maintain this appeal*, in light of the dissolution of AJC and 1730 LP and the appointment of a receiver for 1730 LP, in his appellate reply brief or when asked during oral argument before this court. We agree with the defendants.

"A threshold inquiry of this court upon every appeal presented to it is the question of appellate jurisdiction. . . . It is well established that the subject matter jurisdiction of the Appellate Court and of [our Supreme Court] is governed by [General Statutes] § 52-263, which provides that an aggrieved party may appeal to the court having jurisdiction from the final judgment of the court. . . . [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . . If it becomes apparent to the court that such jurisdiction is lacking, the appeal must be dismissed. . . . *Trumbull* v. *Palmer*, 123 Conn. App. 244, 249–50, 1 A.3d 1121, cert. denied, 299 Conn. 907, 10 A.3d 526 (2010), and cert. denied, 299 Conn. 907, 10 A.3d 526 (2010).

---

[7] General Statutes § 34-271a provides: "A member may maintain a derivative action to enforce a right of a limited liability company if: (1) The member first makes a demand on the other members in a member-managed limited liability company, or the managers of a manager-managed limited liability company, requesting that they cause the company to bring an action to enforce the right, and the managers or other members do not bring the action within ninety days; or (2) a demand under subdivision (1) of this section would be futile."

[8] General Statutes § 34-271b provides: "A derivative action to enforce a right of a limited liability company may be maintained only by a person that is a member at the time the action is commenced and: (1) Was a member when the conduct giving rise to the action occurred; or (2) whose status as a member devolved on the person by operation of law or pursuant to the terms of the operating agreement from a person that was a member at the time of the conduct."

"Standing is established by showing that the party . . . is authorized by statute to bring an action, in other words statutorily aggrieved, or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." (Internal quotation marks omitted.) *Stratford* v. *500 North Avenue, LLC*, 210 Conn. App. 718, 722–23, 271 A.3d 137 (2022). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Our review of the question of the plaintiff's standing is plenary." (Internal quotation marks omitted.) *Black* v. *West Hartford*, 205 Conn. App. 749, 759, 261 A.3d 163 (2021).

Pursuant to General Statutes § 52-509 (a), "[w]hen any partnership is dissolved and the partners cannot agree upon the disposition of the partnership property and the settlement of the affairs of the partnership, any of them may apply to the superior court for the judicial district in which any of the partners resides . . . for the appointment of a receiver to hold the business and all of the property, both real and personal, belonging to the partnership, and dispose of, manage and apply the property as the court or the judge may direct." Under General Statutes § 52-511, "[u]pon the appointment of a receiver for a partnership, [the receiver] shall be entitled to the immediate possession and control of all its property . . . ."

As demonstrated by the filings in the receivership action, both AJC and 1730 LP have been dissolved, and a receiver has been appointed for 1730 LP. Pursuant to §§ 52-509 and 52-511, the receiver now has complete control of the property of 1730 LP and has the sole authority to dispose of or manage that property, as the court or a judge may direct. Because the receiver is the only person authorized by statute to act on behalf of 1730 LP, and, in light of the fact that AJC has been dissolved, the plaintiff does not have a specific personal or legal interest in this appeal from the dismissal of his action concerning 1730 LP's rights with respect to the 2010 mortgage refinance. Accordingly, because the plaintiff appeals from the judgment dismissing his derivative action brought on behalf of AJC, a now dissolved limited liability company, which sought to protect AJC's interest in, and primarily concerned the rights of, 1730 LP, a dissolved limited partnership for which a receiver has been appointed to act on its behalf, the plaintiff no longer has standing to maintain this appeal.[9] In fact, the plaintiff has conceded in a judicial admission,[10] made in two Superior Court cases,[11] that AJC and 1730 LP

---

[9] In light of our dismissal of this appeal for lack of standing, we do not reach the merits of whether the plaintiff had standing to commence this action in the first instance.

[10] "It has long been held that [f]actual allegations contained in pleadings upon which the case is tried are considered judicial admissions and hence irrefutable as long as they remain in the case. . . . An admission in [a] pleading dispenses with proof, and is equivalent to proof. . . . *Provencher* v. *Enfield*, 284 Conn. 772, 792, 936 A.2d 625 (2007). A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it. . . . It is axiomatic that the parties are bound by their pleadings." (Internal quotation marks omitted.) *Tran* v. *Woodworth*, 225 Conn. App. 514, 520 n.3, 317 A.3d 117 (2024).

[11] On December 18, 2024, after this appeal was filed, the defendants filed a motion asking this court to take judicial notice of a filing by the plaintiff in two consolidated Superior Court actions. See *Fischer* v. *Southport Contracting, Inc.*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV-19-6088296-S (November 18, 2024); *Fischer* v. *Scinto*, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV-20-6100675-S (November 18, 2024). In those actions, the plaintiff in the present

have been dissolved and that the receiver appointed for 1730 LP is the only person who can act on behalf of 1730 LP. This court, therefore, lacks subject matter jurisdiction over the appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

---

case sought to dismiss claims brought against him arising from an alleged breach of an agreement between AJC and 1730 LP. In a memorandum of law in support of his motion to dismiss, the plaintiff asserted: "AJC has been dissolved . . . and 1730 [LP] has had a receiver appointed to manage its business . . . . All acts [at issue] are acts done directly to, or by, 1730 [LP] and/or AJC . . . . It is undisputed that prior to AJC's dissolution, the only entity able to bring an action on behalf of 1730 [LP] was AJC, and only AJC can bring an action for itself through unanimous consent . . . . However, AJC is now dissolved . . . and has no ability to take any actions . . . . Consequently, only the appointed receiver for 1730 [LP] can bring legal action on behalf of 1730 [LP] . . . regarding any claims against it." (Citations omitted.) In an order dated January 28, 2025, this court granted in part the motion for judicial notice and took judicial notice of the memorandum in support of the motion to dismiss filed by the plaintiff on November 18, 2024, in the pending cases.